IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HUU NAM TRAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  01-262 |
| | ) |
| METROPOLITAN LIFE INSURANCE COMPANY and | ) |
| KOWK LAM, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
## and
## ORDER OF COURT

Defendants Metropolitan Life Insurance Company ("MetLife") and Kwok Lam ("Lam") (collectively, "Defendants") have filed a Motion in Limine (Docket No. 63) seeking to exclude at trial evidence regarding the Pennsylvania Report of Market Conduct Examination of MetLife ("Pennsylvania Report"), the Florida Report of Investigation into Sales Practices of MetLife ("Florida Report"), and the Connecticut Market Conduct Report ("Connecticut Report").  Defendants' Motion is granted in part and denied in part as follows.

## A.  THE PENNSYLVANIA MARKET CONDUCT EXAMINATION

MetLife's sales practices during the early 1990s were the focus of an investigation by the Pennsylvania Insurance Department, which issued a Market

Conduct Examination Report on February 11, 1994. (Docket No. 65, Ex. A). The report

defined the scope of the investigation as follows:

> A targeted market conduct examination has been
> performed on Metropolitan Life Insurance Company,
> hereinafter referred to as "MetLife", at their Johnstown,
> Pennsylvania office and through interviews conducted
> with various consumers, insurance agents and MetLife
> employees located principally within a six (6) county
> Western Pennsylvania Region, and a Report thereon is
> submitted as follows:

The examination covered the period January 1, 1990 through December 31,

1992, unless otherwise noted.  The purpose of the examination was to review

MetLife's management, marketing and sales practices and procedures in Western

Pennsylvania.  Western Pennsylvania was defined as the counties of Armstrong,

Allegheny, Beaver, Butler, Westmoreland, and Washington.  However, some areas of

review were expanded beyond Western Pennsylvania when initial findings indicated

the activities appeared to occur throughout Pennsylvania.

In order to obtain a thorough perspective on MetLife's marketing practices,

the examination was conducted in three (3) phases:

> (1) MetLife's Johnstown, Pennsylvania office was visited by
> examiners to review copies of requested applications and
> consumer complaint files, as well as securing additional
> data relative to the examination.

> (2)  Interviews were conducted with various consumers,
> agents and MetLife employees in Western Pennsylvania
> concerning MetLife marketing practices and procedures.

> (3)   Interviews were conducted with principal MetLife

> corporate officials having management or supervisory
> responsibilities for the insurer's marketing and sales
> operations.

Pennsylvania Report at 4-5.

The investigation stemmed from complaints made in March 1993 that MetLife customers had been induced through misrepresentations to replace existing MetLife policies, thereby incurring additional costs and fees. Id. at 8.  There also were customer allegations of deceptive marketing of insurance policies as retirement and savings plans. Id.  The report details numerous interviews, and includes copies of the marketing materials utilized in several individual cases.

Defendants assert that this report is "classic hearsay" which should not be admitted at trial.  Plaintiff responds that the report may be admitted as an "official record" under Federal Rule of Evidence 803(8)(C). Rule 803(8)(C) provides an exception to the hearsay rule for "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8); see also, e.g., Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 669 n.10 (report of Legislative Budget and Finance Committee not inadmissible hearsay).

Defendants argue that Rule 803(8)(C) does not apply because there are several indicia of untrustworthiness in the Pennsylvania Report, including that: (1) MetLife was not given the benefit of a hearing before an impartial trier of fact; (2) there were no evidentiary rules; (3) none of the policyholders referred to in the report

were subject to cross-examination; and (4) neither Plaintiff nor Defendant Lam were mentioned in the report.

The Advisory Committee Notes to Rule 803(8) identify four, non-exclusive, indicia of trustworthiness: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held and the level at which conducted; and (4) possible bias.  Here, the investigation was initiated and completed in a timely fashion.  In addition, the Insurance Commission is certainly qualified to conduct an investigation concerning the marketing strategies used by insurance companies within Pennsylvania.  Thus, the first two indicia do not support a finding of untrustworthiness.  Defendants, however, argue that the latter two of these four indicia – whether a hearing was held and possible motivational bias – are lacking in this case and compel exclusion of the report.  I find neither of these arguments persuasive.

First, although the Pennsylvania Insurance Commission did not hold a hearing, that was due at least in part to MetLife's decision not to challenge the findings contained in the report.  Pennsylvania Report, Section XIII.  Thus, I do not view the lack of a hearing to be a controlling consideration in this case.

Second, as evidence of motivational bias, Defendants point to the ruling in Sherman v. Maleski, No. 309 M.D. 1994 (Pa. Cmwlth. Aug. 30, 1994), vacated, 664 A.2d 221 (1995), in which the court determined that public comments made by the then-insurance commissioner made it appear that the commissioner had "prejudged" one of the agents involved.  That ruling, however, does not indicate that any bias existed

with respect to MetLife or Defendant Lam (whom, as MetLife has indicated, is not mentioned in the report).  Therefore, MetLife has not shown any basis for believing that the report was biased, and I find no basis for excluding the report for this reason.

For all of these reasons, Defendants' Motion is denied to the extent it seeks to exclude the Pennsylvania Report in its entirety on the grounds that the Report is inadmissible hearsay.  This ruling, however, does not mean that all of the contents of the Report are necessarily admissible as non-hearsay.  To the extent Defendants contend that specific portions of the Report fall outside the scope of Rule 803(8) or otherwise objects to specific portions of the Report (e.g., as hearsay within hearsay, etc.), I will consider such objections at trial.

Defendants also assert that, even if non-hearsay, evidence regarding the Pennsylvania Report should be excluded at trial on the grounds that it is irrelevant and/or unfairly prejudicial.  This portion of Defendants' Motion is granted to the extent the report discusses or makes findings concerning alleged sales practices distinct from or dissimilar to the "vanishing premium" allegations contained in Plaintiff's Complaint. Such evidence would have a tendency to confuse the jury and, therefore, to unfairly prejudice Defendants.

Defendants' Motion is denied, however, to the extent the Pennsylvania Report discusses or makes findings concerning sales practices similar to Plaintiff's "vanishing premium" allegations.  Such evidence may be relevant, for example, in establishing a pattern and practice on the part of MetLife, or a corporate culture encouraging

5

similar deceptive sales techniques.[1]   This probative value is not substantially outweighed by the danger of unfair prejudice to Defendants.[2]

Defendants also argue that the Pennsylvania Report must be excluded in its entirety because it is outside the scope of the applicable time period.  Specifically, Defendants assert that the Pennsylvania Report is based on an examination of MetLife's practices during the time period of January 1, 1990 through December 31, 1992, but that Plaintiff did not purchase his policy until September 1993.  I disagree.

Although Defendants correctly identify the reporting period as January 1, 1990 through December 31, 1992, the Insurance Department did not even announce the market conduct examination until July 22, 1993, and the examination did not commence until August 18, 1993.  Pennsylvania Report, at 1, 4.  The examination concluded on December 27, 1993 (after Plaintiff purchased his policy), and the report was not issued until February 11, 1994.  Id. at 1.  In addition, the Order contained at the beginning of the Report states that MetLife "shall ensure similarly situated policyholders outside of the Examination reporting period who come forward are accorded restitution consistent with the Report's Recommendations." Id., Order ¶ 5.  Thus, the Report still may be relevant in establishing a pattern and practice on the part of MetLife, or a corporate culture encouraging similar

---

[1]  In this regard, I note that the Pennsylvania Report is focused on MetLife activity within Pennsylvania, the state where the transactions in this case took place.

[2]  Of course, Defendants remain free to make Rule 403 objections, if appropriate,  to specific portions of the Pennsylvania Report when offered at trial.

deceptive sales techniques at the time Plaintiff purchased his policy.[3]

In sum, I will permit use of the Pennsylvania Report only to the extent that the report discusses or makes findings concerning sales practices similar to the "vanishing premium" allegations contained in Plaintiff's Complaint.

### B.  THE FLORIDA REPORT OF INVESTIGATION INTO SALES PRACTICES OF METLIFE

The portion of Defendants' Motion in Limine seeking to exclude evidence of the Florida Report of Investigation dated March 6, 1994, is granted.

With respect to the Florida Report, MetLife argues that it centered largely on the conduct of Rick Urso, Manager of the District Sales Office for the Southeastern Head Office Branch of MetLife.  Urso's scheme to sell insurance policies as "Nurses Retirement Savings Plans" is detailed in the report, and complaints about that program were the genesis for the report.  See Docket No. 65, Ex. B, at 1-2.  The deceptive marketing is alleged to have occurred nationwide.  Id. at 2.  There is, however, no indication that the report addresses any conduct in Pennsylvania similar to that which is alleged in this case, i.e., that insurance policies were sold on the promise that premiums would be payable for a limited time, after which the policies would become self-funding.  Indeed, the focus of the Florida Report was the marketing of insurance policies as retirement accounts, a situation in which the very nature of the transaction was misrepresented.  Moreover, although Urso's territory included Pennsylvania, MetLife represents that the agent who sold the policy in this

---

[3] Defendants' arguments regarding timing go more to the weight of the evidence, not its admissibility.  Even if the timing of the investigation relative to Plaintiff's policy purchase diminishes somewhat the relevance of the Report with respect to Plaintiff's claim, this would not tip the Rule 403 balance in favor of Defendants in this case.

case, Defendant Lam, did not work in Urso's branch and did not sell the policies at issue in the Florida Report as "Nurses Retirement Savings Plan[s]."

I conclude that the Florida Report, which addresses almost exclusively the "Nurses Retirement Savings Plan" marketed by Urso has some limited relevance, particularly since it concludes that MetLife's supervision of its agents led to improper sales tactics on a national level.   However, the specific type of misrepresentation alleged by Plaintiff here does not appear to have been included in the Florida report.  Thus, there is potential to confuse the jury.

Because the Florida Report has limited relevance, yet great potential to confuse the jury, I find that the report is inadmissible as it will be unfairly prejudicial to Defendants under Rule 403.

C.  **THE CONNECTICUT MARKET CONDUCT REPORT**

Defendants' Motion also seeks to exclude evidence of a "Connecticut Market Conduct Report" which Plaintiff identifies as Exhibit 34 in his pretrial statement. Unlike the Pennsylvania and Florida Reports, however, Defendants did not attach a copy of the Connecticut Report to their Motion.  Instead, Defendants indicate that Plaintiff failed to provide them with a bates number or date for the exhibit, and reserve the right to amend the Motion "when and if Plaintiff provides Defendants with the correct bates range."   Docket No. 64, at 2 n.3.   In addition, neither Defendants' Motion nor Brief in Support provide any details regarding the scope of the Connecticut Report or its contents.

Plaintiff likewise fails to provide details regarding the Connecticut Report in

his response.  Indeed, the only substantive reference to the Connecticut Report in Plaintiff's Response Brief is a conclusory sentence in a footnote stating that "The Connecticut Examination which was not addressed in <u>Mohney</u> dealt specifically with the sale of policies through 'vanishing premiums' and is extremely relevant to the issues in this case."  Docket No. 71, at 1 n.1.  Plaintiff, however, does not attach a copy of the Connecticut Report or cite to a specific portion of the report to support this assertion.

Without the Connecticut Report before me, and without any specific information regarding its scope or contents, I simply am unable to make a finding as to the Report's admissibility.  Thus, Defendants' Motion is denied with respect to the Connecticut Report, without prejudice to their ability to renew the Motion if, and when, the parties supply me with the appropriate documentation.

An appropriate Order follows.

<u>* * * * * * * * * * * * * * * * * * * * * * * * * *</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HUU NAM TRAN,                                              )
                                                          )
            Plaintiff,                                    )
                                                          )
      -vs-                                                )
                                                            Civil Action No.  01-262
                                                          )
METROPOLITAN LIFE INSURANCE COMPANY and)
KOWK LAM,                                                 )
                                                          )
            Defendant.                                    )

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **10ᵗʰ** day of March, 2006, Defendants' Motion in Limine to Exclude Evidence Regarding the Pennsylvania, Florida, and Connecticut Market Conduct Examinations of Metropolitan Life Insurance Company (Docket No. 63) is granted in part and denied in part as set forth more fully in the Opinion accompanying this Order.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge

10